Filed 4/26/22  P. v. Tucker CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076593 |
| v. | (Super.Ct.No. FVA1001189) |
| RICCO TUCKER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid A. Uhler, Judge.  Affirmed.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Acting Assistant Attorney General, Steve Oetting, Alan L. Amann and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2013, this court affirmed defendant and appellant Ricco Tucker's conviction of first degree felony murder for his participation in an armed robbery of a gold dealer that resulted in the dealer's murder, and we affirmed his state prison sentence of 10 years, plus 25 years to life.[1]  In 2019, defendant petitioned the superior court to vacate his murder conviction pursuant to Penal Code[2] section 1170.95, a resentencing statute enacted as part of Senate Bill No. 1437[3] (2017-2018 Reg. Sess.).  The superior court initially denied the petition but later vacated its order and determined that defendant had made a prima facie showing of eligibility.  At the evidentiary hearing held on February 19, 2021, defendant conceded he was a major participant, and the superior court found that he acted with reckless indifference to human life.  Defendant's petition was denied.

---

[1]  On the court's own motion and to compile a coherent narrative, we take judicial notice of our prior nonpublished opinion from defendant's previous appeal.  (See *People v. Tucker* (July 26, 2013, E054399) [nonpub. opn.] (*Tucker*); Evid. Code, §§ 452, 459; Cal. Rules of Court, rule 8.1115(b).)

[2]  Unless otherwise indicated, all additional statutory references are to the Penal Code.

[3]  Effective January 1, 2019, Senate Bill No. 1437 amended sections 188 and 189 (Stats. 2018, ch. 1015, §§ 2, 3) to limit the application of the felony-murder rule and the crime of murder under the natural and probable consequences doctrine to persons who: (1) are the actual killer; (2) are not the actual killer, but who share the killer's intent to kill, and aid and abet in the killing; or (3) are a major participant in a felony and who act with reckless indifference to human life.  (§§ 188, subd. (a)(3), 189, subd. (e)(1)-(3).)  In addition, Senate Bill No. 1437 enacted section 1170.95 (Stats. 2018, ch. 1015, § 4), which permits persons previously convicted of first or second degree murder under the felony-murder rule or the natural and probable consequences doctrine, but who could not be so convicted after the amendments to sections 188 and 189 made by Senate Bill No. 1437, to petition the superior court to vacate their murder convictions and to resentence them on any remaining counts.

On appeal, defendant contends the superior court failed to issue an order to show cause (OSC) and never held an evidentiary hearing in violation of his right to due process. He also contends there is insufficient evidence to support the court's finding that he acted with reckless indifference to human life. We reject his contentions and affirm.

## I. FACTS

We take our summary of facts from this court's nonpublished decision in defendant's direct appeal in *Tucker*, *supra*, E054399. (See *People v. Allison* (2020) 55 Cal.App.5th 449, 454 & fn. 3.)

The victim was known as the "gold man." In July 2010, after discussing and planning a robbery, defendant and three other codefendants (Brandon Baskett, Aamon Smith & Ronnie Bluitt) lured the victim and the victim's friend into a garage under the pretense of selling the victim gold for cash. Once in the garage, defendant pointed a nine-millimeter gun at the friend, while Baskett pointed his gun at the victim. When the victim reached for Baskett's gun, defendant pointed his gun at the victim and said, "This is for real." The victim then picked up his bag of cash and ran out of the garage; either defendant or Baskett fatally shot the victim. The police arrived at the scene and found three .40-caliber shell casings on the garage floor. The victim suffered two gunshot wounds; one was fatal. (*Tucker*, *supra*, E054399.)

A day or two after the shooting, officers stopped Baskett, who was driving a vehicle that had been rented by "Cindy Carter" four days before the shooting. Defendant was apprehended in Carter's home. In the trunk of Carter's own vehicle, officers found a

3

receipt from "Shiekh Shoe Store," dated July 27, 2010, at 2:17 p.m. Surveillance videotapes showed defendant and Baskett in the store, displaying large amounts of cash around the time the receipt was issued. (*Tucker*, *supra*, E054399.) Also, the day after the shooting, a witness saw defendant and Baskett wearing new clothing, in contrast to the "raggedy" clothing they had previously been wearing. Baskett was also carrying a black handgun in his waistband and flashing "a large amount of hundred dollar bills." (*Tucker*, *supra*, E054399.)

During a police interview, defendant admitted his role in the robbery and that he and Baskett bought shoes after committing it, but he denied shooting the victim. He said Baskett gave him $600 of the robbery proceeds. (*Tucker*, *supra*, E054399.)

The defense called a detective, who interviewed Smith and Bluitt individually and separately. The detective conceded that when he interviewed Smith individually, Smith mentioned defendant but did not mention Baskett. This contradicted the detective's testimony for the prosecution that Smith had mentioned both defendant and Baskett in his individual interview. (*Tucker*, *supra*, E054399.)

All four defendants were charged with first degree murder. Smith and Bluitt pled guilty to second degree murder and robbery, and they agreed to testify against defendant and Baskett.[4] (*Tucker*, *supra*, E054399.)

---

[4] Smith and Bluitt's plea agreements provided that if they testified truthfully, their second degree murder convictions would be reduced to voluntary manslaughter, and their 15-year-to-life sentences would be reduced to 12 years. (*Tucker*, *supra*, E054399.)

## II. PROCEDURAL BACKGROUND

### A.    *The Verdict, Findings, and Sentence*

Defendant and Baskett were found guilty of first degree murder by separate juries. (§ 187.)  Instructions were given solely on first degree felony murder with second degree robbery as the underlying felony.  No instructions were given on any other theory of murder.  The juries found that defendant and Baskett personally used firearms in the commission of the murder (§ 12022.53, subd. (b)) and that they were felons in possession of a firearm (§ 12021, subd. (a)(1)).  Defendant was additionally convicted of assault with a firearm.  (§ 245, subd. (a)(2).)  He was sentenced to 10 years, plus 25 years to life.  (*Tucker*, *supra*, E054399.)

### B.    *Defendant's Direct Appeal*

On direct appeal, defendant did not challenge the sufficiency of the evidence to support his murder conviction.  Instead, he argued the trial court erred when it instructed with a modified CALCRIM No. 376 that the jury could consider his possession of recently stolen property as evidence that he committed the offense of murder.  (*Tucker*, *supra*, E054399.)  This court agreed that the trial court erred but found the error was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836.  We noted that the jury had been properly instructed, and it could only convict defendant of first degree felony murder if it found beyond a reasonable doubt that he "either directly perpetrated the murder by shooting [the victim] in the course of the robbery, or aided and abetted the other defendant in robbing [the victim,] and [the victim] was murdered during the course of the robbery."  (*Tucker*, *supra*, E054399.)  We concluded the error was harmless

because, inter alia, "ample evidence" showed that the victim was murdered during the robbery—apart from and in addition to the evidence that defendant knowingly possessed recently stolen property. (*Ibid.*)

C.      *Defendant's Petition for Resentencing Under Section 1170.95*

On January 11, 2019, defendant filed a petition for resentencing under section 1170.95. The People moved to strike the petition based on the unconstitutionality of Senate Bill No. 1437 and the resulting statutes. The People also filed an informal response to the petition, along with a request for judicial notice of the decision and records in *Tucker*, *supra*, E054399, arguing defendant failed to state a prima facie case for relief. On March 7, 2019, the superior court[5] concluded that defendant was ineligible for relief, and it denied the petition.[6] Defendant successfully requested reconsideration of his petition.

On August 2, 2019, the superior court found that defendant had made a prima facie showing and stated, "we get to step two and step three." The court further explained that step two is the ruling on "the constitutionality" of Senate Bill No. 1437, and step three is the OSC hearing where the prosecution has to prove "beyond a reasonable doubt that [defendant was] a major participant and acted in reckless indifference to human life." When defendant asked, "[I]s this the show cause hearing?,"

---

[5]  The same judge who conducted defendant's trial also ruled on his petition.

[6]  The March 7, 2019 reporter's transcript is not included in the record for this appeal. However, on July 19, 2019, the superior court noted that it had originally denied the petition.

the court replied, "Yes." The court then ruled that Senate Bill No. 1437 was unconstitutional. When the court asked defendant for argument on this issue, he expressed confusion since the "burden of proof is not on the petitioner but on the prosecutor. . . . So, you denied me using the 1170 saying that I'm not eligible. You went down the list saying that I'm the actual killer." The court replied, "No. I said 'and/or'[7] because, again, there is a confusion because I've already been upfront, that Mr. Baskett is going to come on September 13th for the same hearing, and he's going to say you were the shooter. He's seeking the same relief. So, there is some inconsistent evidence based on the jury having not a unanimous verdict on whether or not Mr. Baskett personally discharged the firearm that caused the death of the victim; so, there is some confusion as to that issue. [¶] . . . [¶] The reason I said 'may and/or' is because of the Court of Appeals' opinion . . . that the People's theory was that either you or Baskett could be the actual shooter. So that's what I was basing that on in terms of the Court of Appeals' opinion that that was the People's theory. [¶] So it is what it is, Mr. Tucker, in regard to that information. [¶] I'm fully aware that you claimed during your statement to law enforcement that you only possessed the nine-millimeter and Baskett had the .40-caliber and that . . . [¶] . . . [¶] . . . the .40-caliber discharge was found at the crime scene." Defendant then requested legal representation and the superior court appointed counsel and continued the evidentiary hearing.

---

**7** The superior court's reference to "and/or" was in reference defendant's inability to fall within the prescription of section 1170.95 if he was either the actual killer or a major participant who acted with reckless indifference to human life.

On December 13, 2019, the superior court denied the People's motion to strike, ruled that Senate Bill No. 1437 and section 1170.95 are constitutional, and continued the evidentiary hearing. On July 8, 2020, after the court provided an "indicated ruling," defense counsel stated that defendant would concede the issue of whether he was a major participant and focus on the issue of reckless indifference to human life.

On February 19, 2021, the superior court noted that it had given the parties a tentative ruling, and it was "going to go forward with that ruling." The court then provided the defense with an opportunity to be heard. The parties stipulated to defendant's date of birth, which indicated that he was 20 years old at the time he committed the offense. Defense counsel conceded that defendant was a major participant but argued that he did not act with reckless indifference to human life. In support of his argument, counsel pointed to the following evidence: (1) defendant's testimony that the "safety" was engaged on his gun, and there was no bullet in the chamber; (2) evidence that when the victim attempted to grab Baskett's gun, defendant pointed his gun at the victim and said, "'This is for real'"; and (3) testimony that when the victim grabbed his bag of cash and ran, defendant let him go and did not shoot him or attempt to chase him. Given defendant's age at the time of the offense—20 years old—defense counsel argued that his brain had not fully developed, and his mental processes were not sufficiently deliberative to constitute reckless indifference to human life.

In response, the prosecutor argued that whether the gun's safety was engaged or if there was no bullet in its chamber, defendant's statements were self-serving. According

8

to the prosecutor, defendant's actions before and after the shooting are evidence of his subjective awareness and knowing involvement in the violent nature of the crimes.

After "conducting an examination of the facts, which included the petition for relief, [defendant's] declaration, all the moving papers on behalf of the [parties], and taking judicial notice of [this court's decision in *Tucker*, *supra*, E054399[8]], the information, files, jury instruction, court exhibits, trial transcripts, and all other records of the court case," the superior court concluded that defendant "was a major participant in the crime and acted with reckless indifference to human life during the course of the underlying robbery," and it denied the petition.

### III. DISCUSSION

On appeal, defendant contends the superior court's order denying his petition must be reversed because the court failed to issue an OSC and conduct an evidentiary hearing pursuant to section 1170.95, subdivision (d). He also asserts the evidence was insufficient as a matter of law to prove his murder conviction because the prosecution case "failed to prove . . . that he acted with reckless indifference to human life" under *People v. Clark* (2016) 63 Cal.4th 522, 617 (*Clark*).

---

[8] Defendant asserts the superior court impermissibly relied on this court's 2013 opinion (*Tucker*, *supra*, E054399) when it denied his petition. We disagree. The court's statements indicate that it considered all the evidence presented—both at trial and in defendant's statement—in making its decision.

*A.      Defendant Received an Evidentiary Hearing Under Section 1170.95,*

*subdivision* (*d*)

"If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and could not now be convicted of murder because of changes to section 188 or 189 [citation], the court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1170.95, subdivision (c).  [Citation.]  Further, upon the filing of a facially sufficient petition, the court must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply, and the court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief.  [Citations.]  [¶]  *If the petitioner makes a prima facie showing under section 1170.95, subdivision (c), the court must issue an order to show cause and hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts.'*  [Citation.]  At the hearing, '[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.'"  (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 984, italics added.)

Here, defendant's primary complaint is that the superior court failed to follow the proper procedure by "never issu[ing] an order to show cause" as required by section 1170.95, subdivision (c), and, thus, the case must be remanded for a hearing pursuant to subdivision (d).  We disagree.  Although the superior court failed to issue a written OSC, it did inform the parties both orally and by written minute order that defendant had established prima facie eligibility, and it was conducting an "evidentiary hearing in

10

regards to re-sentencing under 1170.95." At the hearing required by section 1170.95, subdivision (d), defendant was present, both parties had an opportunity to present new evidence, defendant's counsel stipulated to defendant's date of birth and conceded that he was a major participant, but argued that the People had not proved, beyond a reasonable doubt, that defendant acted with reckless indifference to human life. The record is devoid of any evidence that defense counsel was misled as to the purpose of the hearing. Thus, any procedural error in not formally denominating the February 19, 2021 evidentiary hearing as pursuant to an OSC was harmless. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

### B. Sufficient Evidence Supports the Superior Court's Findings

Defendant contends the evidence is insufficient as a matter of law to show "that he acted with reckless indifference to human life." We disagree.

"The scope of our review for substantial evidence is well settled. The test is not whether the People met their burden of proving beyond a reasonable doubt that [the petitioner] was ineligible for resentencing, but rather 'whether *any* rational trier of fact could have' made the same determination, namely that '[t]he record . . . disclose[s] . . . evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [as did the superior court]. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the [order] the existence of every fact the [superior court] could reasonably have deduced from the evidence. [Citation.] "Conflicts [in the evidence] . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the

11

trial judge . . . to determine the . . . truth or falsity of the facts upon which a determination depends."'"'" (*People v. Williams* (2020) 57 Cal.App.5th 652, 663.)

### 1. *Major participant*

In deciding whether defendant was a major participant in the underlying felony, "the ultimate question [is] whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.'" (*People v. Banks* (2015) 61 Cal.4th 788, 803.) Defendant conceded he was a major participant; nonetheless, the superior court stated the facts, which support his concession.

Acknowledging the factors set forth in *People v. Banks*, *supra*, 61 Cal.4th at p. 808,[9] the superior court found that (1) one or two days prior to the robbery, defendant and Baskett took possession of the rental car used as a getaway vehicle, removed the paper license plates to avoid detection, and defendant returned the rental car; (2) defendant met with the codefendants to devise the plan to lure the victim under the pretense of selling gold; (3) defendant and Baskett were a team in the robbery; (4) both were armed with operable, loaded guns; (5) defendant was "in a position to facilitate or prevent the actual murder and, again, he held a gun to the victim's head, which

---

[9] "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*People v. Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.)

immediately preceded the victim's flight"; (6) after the victim was shot, but still alive, defendant fled from the scene instead of rendering aid; and (7) defendant showed no remorse given his shopping spree within hours of the shooting. In finding defendant to be a major participant in the commission of the robbery, the court noted that he "was actively involved in every element of the robbery and was physically present during the entire sequence of criminal activity, culminating in the murder of the victim."

### 2. *Reckless indifference to human life*

"'A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.'" (*Clark*, *supra*, 63 Cal.4th at p. 617.) Factors to consider in determining whether a defendant displayed reckless indifference to human life include: (1) knowledge, use, and the number of weapons; (2) physical presence at the crime and opportunity to restrain the crime and/or aid the victim; (3) duration of the felony; (4) knowledge of the likelihood of a killing; and (5) any effort to minimize the risk of violence during the felony. (*Id*. at pp. 618-622.)

Before discussing the *Clark* factors, the superior court stated that it found defendant's claims that his firearm was not loaded, and its safety was engaged to be self-serving. According to the court, although defendant's claims were "uncontradicted by the evidence," his firearm was never located, his credibility was lacking given the fact that he "consistently lied throughout the interview process," and he offered no new evidence to support his claims. Thus, turning to the *Clark* factors, the court pointed out that (1) both defendant and Baskett entered the garage "armed and pointed their handguns directly at the victim"; (2) two guns were involved—"more than minimal"—since the "more guns, the greater the chance of gunfire and death"; (3) defendant was "actually inside the garage with Baskett when the shots were fired"; (4) "[i]nstead of aiding the victim when down on the ground, [defendant] and Baskett took the victim's bag of money and fled," showing that defendant failed to take advantage of "the opportunity to act as a restraining influence on Baskett"; (5) defendant was "part of a concerted effort, involving multiple people to rob the victim at gunpoint"; and (6) defendant was in "possession of a gun, which he directly pointed at the victim's head," and "[h]is own struggle with the victim over the gun increased [the] risk of harm to the victim," who knew it was a real gun and attempted to flee.

Although the superior court stated that "the duration of the felony weighs in favor of [defendant], as well as there's no evidence of [his] specific knowledge of [Baskett's] likelihood of killing, . . . [it found] the fact that [defendant] was clearly involved in the planning of the robbery and was a major participant in the commission of that robbery, substantially outweighs those two factors." Moreover, the court noted that defendant

14

"had unimpeded opportunity to observe Baskett's action immediately preceding the shooting that suggested a willingness that Baskett would use deadly force to accomplish his objective when he held a loaded gun to . . . the victim's head[]. These circumstances coupled with [defendant's] inactions, created a reasonable expectation that the death of [the victim] or another would result." The court was "highly skeptical that [defendant] had the safety on and no bullet in the chamber, as he has indicated, when considering his conduct before and after the shooting." Acknowledging the possibility that defendant was not able to physically stop "an unanticipated shooting," the court observed the lack of evidence that he "ever shouted at Baskett to stop shooting or complained of Baskett's violent conduct after the shooting." Instead, defendant and Baskett stole the victim's money, fled the scene without offering aid, and then went on a shopping spree. In short, the court concluded that the totality of the circumstances constitutes substantial evidence to show, beyond a reasonable doubt, that defendant's involvement in the crime displayed a reckless indifference to human life.

According to the record, the superior court relied on several significant factors identified by the California Supreme Court in reaching its conclusion. Many of these factors are the same ones relevant to the major participation inquiry: defendant was armed, present at the scene, and could have potentially aided the victim. Defendant's actions, or lack thereof, reveal his knowledge that the probability of the victim being killed was high. Even so, he made no efforts to minimize this risk. The only factors that weigh in his favor—the crime occurred quickly, and he had no specific knowledge of

15

Baskett's likelihood of killing the victim—do not outweigh the factors that militate against him.[10]

We conclude that substantial evidence supports the superior court's finding that defendant was not eligible for resentencing because he acted with reckless indifference to human life during the commission of the felony murder. In reaching this conclusion, "we reject [the defendant's] portrayal of the evidence in the light most favorable to himself as 'that showing is largely irrelevant to the issue on appeal [of] whether the evidence in [the People's] favor provides a sufficient basis for [the superior court's] findings. [The defendant's] . . . factual presentation is but an attempt to reargue on appeal those factual issues decided adversely to [him] at the trial level, contrary to established percepts of appellate review.'" (*People v. Williams*, *supra*, 57 Cal.App.5th at pp. 664-665.)

---

[10] Defendant contends that applying the analysis in *In re Taylor* (2019) 34 Cal.App.5th 543 to this case "shows there was insufficient evidence [he] acted with reckless indifference to human life." We disagree. That case is distinguishable. In *Taylor*, the Court of Appeal noted the following factors: (1) the evidence was "inconclusive as to whether [the defendant] knew [his codefendant] had a gun" on the night of the robbery, (2) the defendant did not "have or use his own weapon during the crime," (3) there was no evidence to suggest the defendant "appreciated the planned robbery posed a heightened risk of death," (4) there was nothing to show that the defendant knew of the likelihood of lethal force, (5) the planned duration was short, (6) there was no evidence that the codefendant had killed before or that the defendant was aware of any previous violent behavior on the codefendant's part, and (7) the defendant had no opportunity to prevent the shooting since he remained in the getaway vehicle. (*Id.* at pp. 557-559.) The only unfavorable evidence was the defendant's actions after the shooting; however, the Court of Appeal held that his failure to help the victim, "while reprehensible, does not show he acted with reckless disregard to the risk to human life posed by the planned robbery." (*Id.* at p. 559.) The same may not be said of the defendant in this case.

16

## III.  DISPOSITION

The February 19, 2021 order denying the section 1170.95 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.